Titan Shipping Co., Inc. (E. J. Fay) v. United States

No. 4414.—Invoices dated Paris, France, July 17, 1929, etc.
 Entered at New York July 27, 1929, etc.
 Entry No. 719803, etc.

(Decided on remand [Reap. Dec. 4045] October 18, 1938)

Jerome G. Clifford for the plaintiff.

Webster J. Oliver, Assistant Attorney General (Dorothy C. Bennett, special attorney), for the defendant.

McClelland, Presiding Judge: These are appeals to reappraisement which were heard by me and decided (Reap. Dec. 3954) in all respects adversely to the plaintiff. From my decision an application for review thereof was filed within the statutory time, and after being heard by the Second Division of this court my decision was reversed (Reap. Dec. 4045) on the ground that I had erred in excluding from the record made before me an affidavit marked Exhibit A for Identification, but in addition to the reversal of my ruling excluding the affidavit the division proceeded to admit it in evidence, gave it consideration, and upon the record thus made found in favor of the plaintiff.

From the decision of the division an appeal was taken to the Court of Customs and Patent Appeals, and there the conclusion of the division that it was error to have excluded Exhibit A for Identification was upheld, but it was also held that the division exceeded its statutory authority in admitting the affidavit in evidence and giving consideration to it in arriving at its conclusion. See United States v. Titan Shipping Co., 25 C. C. P. A. 403, T. D. 49485.

When the mandate was received from the appellate court it in form directed that the judgment of the division be reversed and that the cause be remanded to the trial judge with directions to grant a new trial, and the mandate of the division in turn, remanding the case back to me, followed such instructions.

When the cases next appeared on my calendar counsel for the plaintiff contended that all I was required to do was to follow the direction of the appellate court and admit the affidavit, Exhibit A for Identification, but counsel for the Government submitted that the direction, both of the appellate court and the division, was that a new trial should be had, and in deference to these mandates I sustained Government counsel's contention and over the objection of counsel for the plaintiff received in evidence further oral testimony of William A. McDevitt, the examiner who passed the merchandise in issue, a pricelist, and a report of Treasury Representative Richards dated March 31, 1938, these two exhibits being marked Exhibits 3 and 4

respectively. Pursuant to the direction of the higher tribunals Exhibit A for Identification was received in evidence as Exhibit A.

From the testimony taken respecting the pricelist, Exhibit 3, it has no probative value whatever insofar as the issue in these cases is concerned, and examination of the Treasury representative's report, Exhibit 4, reveals that the same may be said of that exhibit.

On review of the whole record, including the admitted affidavit, Exhibit A, I am convinced that the values found by me in my original decision actually represented the foreign market value of the involved merchandise on the respective dates of shipment.

Exhibit A is an affidavit executed by Raymond Legrand, the shipper of the merchandise in issue, and sworn to before the American vice consul at Paris, France, on October 3, 1930. In it numerous sales are listed said to have been made between July 1, 1927, and September 9, 1930. As pointed out in the brief of the Government, however, only ten of such sales, namely those between the dates of June 13, 1929, and December 13, 1929, are within the period of the exportations of the merchandise in issue. Accompanying such affidavits are what are claimed to be *copies of invoices* of the sales listed therein.

Exhibit 2 is a report dated March 19, 1930, signed by Assistant Customs Attaché Lucien Picard, of an investigation made at the premises of the shipper Legrand, and in it there are specifically set forth *copies of sales invoices* which the assistant customs attaché took from the firm's records. It is interesting to note that all of the invoices reported in the customs attaché's report show retail unit prices and extensions and discounts of 50 per centum, 5 per centum, and 5 per centum, as well as the luxury tax deduction, in order to arrive at the total wholesale price of the goods, while all of those attached to the affidavit, Exhibit A, show wholesale unit prices and extensions, less a discount of 2 per centum and a tax of 25 or 50 centimes per invoice, evidently not the luxury tax.

Manifestly, either the invoices submitted with Exhibit A or those reported in the customs attaché's report are not true copies, or the shipper kept two sets of invoices or two records showing prices calculated on different bases. One of the invoices attached to Exhibit A covers a shipment of goods to Madame Haimart, 2 Rue de Paris, Soisy-Sous-Montmorency. This invoice is dated December 13, 1929, and the body thereof reads as follows:

| | | | |
|---|---|---|---|
| 251 | 12 Lotions individuelles "Mimzy" | 3. 75 | 45. 00 |
| 281 | 1 Flacon extrait Mimzy 10 grammes | 6. 50 | 6. 50 |
| 225 | 1 Flacon luxe Eau de toilette "Mimzy" | 12. 50 | 12. 50 |
| 226 | 1 Flacon luxe Eau de toilette "Mimzy" | 30. 00 | 30. 00 |
| —— | 1 Flacon "Sa Fleur" 10 grammes | 6. 75 | 6. 75 |
| | | | 100. 75 |
| | Escompte 2% net | | 2. 00 |
| | Total de la facture | | 98. 75 |

One of the invoices reported by the assistant customs attaché covers goods shipped to Madame Haimart, 2 Rue de Paris, Soisy-Sous-Montmorency, under date of December 13, 1929. A translation of this invoice is given in the assistant customs attaché's report, and the body of it reads as follows:

| | | | |
|---|---|---|---|
| No. 251 | 12 bottles of individual lotion "Mimzy" | 8. 00 | 96. 00 Fcs |
| No. 281 | 1 bottle extract "Mimzy" 10 grammes | 30. 00 | 30. 00 |
| No. 260 | 1 bottle eau de toilette "Mimzy" 60 gr | 50. 00 | 50. 00 |
| No. 261 | 1 bottle eau de toilette "Mimzy" 125 gr | 112. 00 | 112. 00 |
| | 1 bottle "Sa fleur" 10 gr | 10. 00 | 10. 00 |
| | | | 298. 00 |
| | Discount 50% | | 149. 00 |
| | | | 149. 00 |
| | Cash Discount 5% | | 7. 45 |
| | | | 141. 55 |
| | Special discount 5% | | 7. 05 |
| | | | 134. 50 |
| | Luxury tax 12% | | 35. 75 |
| | Total | | 98. 75 |

Although the third and fourth items on each invoice are numbered differently, it will be observed that the description in each case covers "Eau de toilette Mimzy", and I am convinced that these two invoices involve the identical shipment. It will be seen that the total of each invoice is the same, 98.75 francs, but the copy reported by the assistant customs attaché shows that the luxury tax of 12 per centum, the main item in dispute, had been deducted before arriving at the 98.75-franc total of the invoice, while it would appear from Exhibit 1, also an affidavit executed by M. Legrand and received in evidence, that such total included "all charges, taxes, and exactions of every nature."

In determining the weight to be given Exhibits A and 1 it must be remembered that they stand unsupported, and that they were executed by one having a more or less direct interest in the outcome of these proceedings. In contradistinction thereto, the unit prices shown in the copies of invoices reported by the assistant customs attaché are supported by the prices shown in a printed pricelist attached to the report, and it is inconceivable that the assistant customs attaché, a sworn officer of the Government, could have any interest in reporting conditions otherwise than as he found them.

I am of the opinion that a clear preponderance in weight of the evidence establishes that the prices indicated by the report of the assistant customs attaché, Exhibit 2, were, on the respective dates of exportation, the correct foreign values, within the meaning of section 402 (b) of the Tariff Act of 1922, of the merchandise in issue.

I therefore adhere to my original conclusion and find the foreign value, as described above, of the items in issue to be as set forth in schedule A attached hereto and made a part of this decision.

Judgment will issue accordingly.

SCHEDULE A

| | No. | | French francs per each |
|---|---|---|---|
| Mimzy Extraits | 281 | Flacon luxe 10 grammes, boite carton | 30 |
| Mimzy Extraits | 283 | Flacon luxe 20 grammes, boite carton | 85 |
| Mimzy Extraits | 280 | Flacon luxe 40 grammes, boite carton | 150 |
| Mimzy Extraits | 285 | Flacon luxe 60 grammes, boite carton | 250 |
| Mimzy Poudre de Riz | 277 | Boite petit modele de luxe | 15 |
| Mimzy Poudre de Riz | 279 | Boite grand modele de luxe | 30 |
| Mimzy Talc | 210 | Flacon 125 grammes | 30 |
| Mimzy Talc | 200 | Flacon 125 grammes | 30 |
| Mimzy Talc | 270 | Poudre de bain en boite carton | 30 |
| Sweet Peas Poudre de Riz | 375 | Poudre de bain en boite luxe carton | 30 |

Less discount 50%
Less discount 5%
Less discount 5%
Packed.

As to all other merchandise involved, the proper dutiable values are the values returned by the appraiser.